### 31057.   BATTLE *v.* THE STATE.

DECIDED FEBRUARY 15, 1946.

*Daisy L. Churchwell,* for plaintiff in error.
*Charles H. Garrett, solicitor-general,* contra.

MacINTYRE, J. Battle was indicted for an assault with intent to murder, and found guilty of unlawfully shooting at another. His motion for new trial was overruled and he excepted.

■ The prosecutor testified that he and the defendant lived next door to each other on an alley or back street, in Macon, Georgia; that there is a picket fence around the house of the defendant about four and one-half feet high; that the front porch of the defendant's house was standing on about a level with the fence, which was only a few feet away; that they had some words; that the defendant threw a brick at the prosecutor, who in return threw a brick at the defendant; that this happened while they were standing in the alley in front of their houses; that the defendant rushed upon his porch and the woman with whom he was living delivered him a pistol; that the defendant, while standing on his porch, shot at the prosecutor in the alley and this shot missed him, but, as the prosecutor ran up the hill in the alley, the defendant shot at him a second time and hit him in the back inflicting a wound; and that thereafter, as soon as they could obtain a conveyance, the prosecutor was carried to the hospital and treated. The doctor who treated him testified in part as follows: "As to what would be my opinion as a physician that the course of the bullet would indicate—the angle from which it was fired would seem likely that the bullet was fired from the back and right and perhaps, but not certainly, from an elevated angle. I believe that the wound of entrance is slightly higher than the point where the bullet struck the rib, the broken rib on the other side. I think that would indicate the bullet was slanting downward; that is my idea. The wound to the patient was not particularly dangerous. I think it is fairly obvious that to shoot a man in the back is a dangerous thing to do." This seems to cor-

roborate the prosecutor, who testified that he was shot from an elevation such as the porch of the defendant's house, as the bullet ranged downward, and was not shot from the ground, as contended by the defendant.

There were two other witnesses for the State who corroborated the prosecutor with testimony that the defendant, after the first throwing of bricks, as above stated, ran upon his porch, where he was given a pistol at his front door by the woman he lived with, and thereupon shot at the prosecutor, who was standing in the alley, and missed him with the first shot; that the defendant then shot at the prosecutor a second time from the rear as he was fleeing up the hill in the alley, hitting him in the back. The defendant and two of his witnesses claimed that the prosecutor was advancing in the alley upon the defendant with a knife, while the defendant was standing in the gate of his front yard, and that the defendant told him to stop; that the prosecutor would not stop, so he fired upon him and missed, and as the prosecutor continued to advance, he fired a second shot which struck the prosecutor.

Some question arose during the progress of the trial as to the physical facts that existed at the place and surroundings where the shooting occurred, and, as it appears from the record, the city officer and the solicitor-general, on the second and last day of the trial, and before court met on that day, went out to the scene of the shooting to examine the physical facts as they existed; that thereafter the detective, in testifying to the physical facts there, stated, among other things, that in his opinion the porch was between 4 and 4½ feet high.

Special ground 1 in the motion for new trial was on newly discovered evidence and, in support thereof, the defendant introduced the affidavit of James Banks, accompanied by the supporting affidavits of two witnesses as to his character, associates, etc., as provided in the Code, § 70-205. Banks, in his affidavit, testified that he had visited the scene of the shooting since the trial; that he had measured the height of the fence in question; and that a place was pointed out to him as the place where the defendant was standing on the porch when he shot the prosecutor. He swore in the affidavit that, if the prosecutor had been in the alley, this could not have been done, as contended by the State, on account of the height of the fence which was between the porch and

the alley; "that the lowest paling in said fence from the ground to its top is 4 feet, 8 inches high, and that all of said palings are higher than this and that the highest paling is 5 feet, 1½ inches from the bottom to the top, and that generally said palings are 5 feet, 1½ inches high; that these palings are made of wood and are fastened perpendicular on the fence close together, so that there is only a small fraction of an inch between said palings;" and that it would have been next to impossible "for a person to have stood on the porch of 159 Coles Alley [defendant's residence] and have fired a shot from said porch into the alley and strike a man standing in the alley anywhere nearby said paling fence without shooting through the paling, and the bullet to have struck the person shot at, for it would have naturally gone over the head of any person standing in the alley."

The Code, § 70-205, provides: That the movant and each of his counsel shall swear that they did not know of the existence of such newly discovered evidence before the trial, "and that the same could not have been discovered by the exercise of ordinary diligence." Here the movant and his counsel, in their affidavit, swore "that the affiants made the following efforts before the trial of said case to discover all of the evidence in said case, to wit: (1) interviewed witnesses listed on back of indictment; (2) talked to people in the community where the shooting took place; and (3) examined the premises where it occurred and tried to find out all the facts." Thus the defendant was aware of the physical facts at the scene of the shooting, and took no steps to secure before or at the trial the evidence sought to be introduced after the trial by his motion for new trial, though he had examined the premises in question, and, he knew that the State on the first day of the trial had introduced evidence that the shots in question had been fired from the porch of the defendant's house, and that the front picket fence was between the porch and the alley, where the State's evidence on the first day of the trial claimed that the prosecutor had been shot. The defendant's counsel had the same opportunity to re-examine the physical facts before court on the second day of the trial as the solicitor-general and the city officer had; and the discovery after the trial of what Dave Banks would testify as to these physical facts was not newly discovered evidence such as would be a ground for the grant of a new trial. *Doyal*

v. *State,* 70 *Ga.* 134 (10) ; *Savannah, Florida & Western Ry.* v. *Harper,* 70 *Ga.* 119. In short, the judge might have decided that, if the defendant had used ordinary care, he could have discovered and introduced at the trial such evidence as to the physical facts in question. *Arnold* v. *State,* 46 *Ga.* 455; *Lakes* v. *Lakes,* 171 *Ga.* 692 (156 S. E. 620). Moreover, the newly discovered evidence of Banks tended to disprove or contradict important portions of the testimony of three of the State's eyewitnesses to the crime, and is largely or entirely opinionative as to the size and location of things at the scene of the crime. *Davis* v. *State,* 175 *Ga.* 356, 359 (3) (165 S. E. 56) ; *Allen* v. *State,* 187 *Ga.* 178 (200 S. E. 109, 120 A. L. R. 495). We can not say, under the facts as they appear, that the judge abused his discretion in overruling the motion for new trial on the ground of newly discovered evidence of Banks.

The defendant excepts to the failure of the judge to send out and get witnesses, when they had not been subpœnaed under the provisions of the Code, § 38-2401, and states: "That the two witnesses, Minnie Lee Walker and Tommie Lee Dennis, would not sign the affidavits which they said spoke the truth and which are attached hereto, which signing he and his counsel had heretofore relied upon, and movant therefore prays that this [the trial] court will use its powers to send out and get them and bring them before it, that the facts given may be verified and the verification made a part of this record." "The defendant then avers that the evidence was material and would produce a different result favorable to the defendant, if another trial was had, and then alleges the reasons which he contends support his contentions. Section 38-2401 provides for obtaining the evidence of witnesses under the circumstances here alleged by the defendant, but the defendant did not follow it, and no doubt, if the exigencies of the case had required a continuance in order for the defendant to have complied with such Code provisions, the judge would have granted it. However, no motion for a continuance was made, and the question of a failure to grant a continuance is not now before this Court. Moreover, there were no supporting affidavits under the Code, § 70-205, showing the character, association, etc., of the parties whose evidence was sought to be thus obtained, and the exception to the failure or refusal of the judge to send out and

bring before him the witnesses in question, who had not been subpœnaed as provided in § 38-2401, and whose character, associates, etc., had been supported by affidavit, as provided in § 70-205, was not cause for a new trial under the facts as they here appear.

■ Special ground 2. An objection to evidence on the general ground that it is "improper" raises in this court no specific question of law for adjudication. "A ground of a motion for a new trial, complaining of the admission of certain designated evidence over the objection 'that it was incompetent and inadmissible,' is not well made, for the reason that an objection to the admission of evidence must be on some specific ground, and not generally that it is incompetent." *Richardson* v. *State,* 141 *Ga.* 782 (2) (82 S. E. 134); *Gordon* v. *Gilmore,* 141 *Ga.* 347 (2*a*) (80 S. E. 1007); *McDonald* v. *State,* 21 *Ga. App.* 125 (6) (94 S. E. 262).

A reason not appearing to have been urged before the trial judge at the time the evidence was offered, nor other timely motion to rule it out during the progress of the trial, can not be considered by this court. It is not sufficient to say that an objection was urged, and later, in the motion for new trial, give reasons why the evidence should not have been admitted. *Mack* v. *State,* 71 *Ga. App.* 303 (30 S. E. 2d, 795); *Edenfield* v. *State,* 37 *Ga. App.* 628 (141 S. E. 220); *Hardin* v. *Atlanta Gaslight Co.,* 71 *Ga. App.* 63 (30 S. E. 2d, 121). Applying these rules to this special ground, where the objection urged to the evidence complained of was that it is "improper," is not well made and the ground is not meritorious.

■ After a verdict of guilty, in passing on the motion for a new trial, that view of the evidence most favorable to the State must be taken, for every presumption and every inference is in favor of the verdict.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*