31719. BURKE *v.* THE STATE.

DECIDED FEBRUARY 13, 1948. REHEARING DENIED MARCH 18, 1948.

*James R. Venable, Frank A. Bowers, Jackson L. Barwick,* for plaintiff in error.

*Paul Webb, Solicitor-General, J. Walter LeCraw,* contra.

MacIntyre, P. J. 1. In ground four of the motion for new trial the defendant excepts to the following charge: "To the indictment returned against him, the defendant Emory Burke has entered his plea of not guilty, and the allegations of the indictment on the one hand, and the pleas of not guilty of the defendant, on the other hand, form the issues which you have sworn that you would well and truly try, and a true verdict make according to the evidence." The defendant contends that this charge was erroneous in that "it was prejudicial to Burke under the facts hereof, by stating 'a true verdict make according to the evidence,' when the true principle then applicable was that the jury would try such issues, formed by the not-guilty plea to the indictment, and make a true verdict according to the law and the facts."

Code § 59-709 provides: "In all criminal cases, the following oath shall be administered to the petit jury, to wit: 'You shall well and truly try the issue formed upon this bill of indictment

between the State of Georgia and A. B., who is charged (here state the crime or offense), and a true verdict give according to evidence. So help you God.' "

"It is not necessary to administer the oath prescribed for jurors in civil cases [Code, § 59-706] . . to the jury empaneled to try criminal cases. The oath prescribed in the Penal Code, § 979 [Code, § 59-709], is the only oath designed for jurors in criminal cases." *Taylor* v. *State*, 121 *Ga.* 348 (2) (49 S. E. 303). Thus the court charged the jury to do what they had just previously sworn in their oath to do.

"The jury trying a criminal case are sworn to give a true verdict according to evidence. It is important for them not to confound the prisoner's statement with the evidence or the evidence with the statement. The statute allows them to give the statement such force as they think proper, and even to believe it in preference to the sworn testimony. In charging them the court should keep the evidence distinct from the statement and shape the general tenor of the charge by the evidence alone and the law applicable to it. For if the court should mingle evidence and statement together, the jury might find it difficult to separate them and might fail to understand the import of the instructions delivered from the bench. At some stage of the charge the statutory provisions touching the statement ought to be made known to the jury, and this, as has frequently been suggested by this court, is usually enough to say touching the statement. The statute on that subject is so plain and explicit as to need no exposition or comment." *Vaughn* v. *State*, 88 *Ga.* 731, 738 (16 S. E. 64).

After giving the above-quoted charge, the trial judge instructed the jury as follows: "The court charges you further that you are the judges both as to the law and the facts in criminal cases. The law you will take from the court as given you in charge. The facts you will get from the witnesses who appear and testify, and from documentary evidence, and from the statement of the defendant, and to the facts as you find them to be you will apply the law as given you in charge by the court. You are bound by the charge of the court as to the law, except that you are the judges of the law in applying the law to the facts as you find them to be."

"Having charged as to the weight which might be given the prisoner's statement, it was not necessary, in defining a reasonable doubt, for the judge further to say that it might arise from the defendant's statement." *Walker* v. *State*, 118 *Ga.* 34 (1) (44 S. E. 850). See Code, §§ 38-110, 38-415.

The judge correctly told the jury the method to employ in applying the law as given them in charge by the court to the facts as they found them to be. Thus it seems obvious to us that the exceptions made in this ground are without merit.

2. In special ground five of the motion for new trial the defendant contends that the evidence did not authorize a charge on conspiracy. It is not contended that the charge as given was an incorrect statement of the abstract law of conspiracy.

The evidence is voluminous, consisting of some eighty-seven typewritten pages, and we think that it would serve no good purpose, but on the contrary would make this decision unnecessarily long, to recite all of the evidence showing the acts and conduct of the defendant, the instructions to coconspirators, and the express agreements between the defendant and his coconspirators to do the unlawful acts alleged in the indictment. Certainly there was enough to submit the question of conspiracy to the jury.

3. Special grounds six, seven, eight, and nine are exceptions to parts of the charge and are argued together by the plaintiff in error. The charge complained of in ground eight is as follows: "If the defendant, gentlemen, under the record as made in this case, is guilty, it is your duty to find him guilty on that count, or those counts on which you are satisfied that the burden has been carried by the State." The judge then instructed the jury to find the defendant not guilty on count one.

He then charged the jury: "You would next take up count two, and if you are satisfied beyond a reasonable doubt that the defendant is guilty under count two, then you should so find, and the form of your verdict would be, 'We the jury find the defendant, Emory Burke, guilty under count two.' If you are not satisfied of his guilt under that count, or if you have a reasonable doubt of his guilt, then the form of your verdict would be, 'We the jury find the defendant, Emory Burke, not guilty under count two.'"

This excerpt was excepted to in special ground seven of the motion for new trial. Thereafter the trial judge charged the jury as follows: "If you are satisfied of his guilt under count three, then you should convict him, and the form of your verdict would be, 'We the jury find the defendant, Emory Burke, guilty under count three.' If you are not satisfied of his guilt under count three, or if you have a reasonable doubt of his guilt under that count, the form of your verdict would be, 'We the jury find the defendant, Emory Burke, not guilty under count three.' "

This excerpt was excepted to in special ground nine, and this same charge as given with reference to count three was given with reference to count four. This charge was excepted to in special ground six.

The defendant, in these special grounds, six, seven, eight, and nine, contends that each of these excerpts was erroneous in that it failed to refer to the State's duty to prove him guilty beyond a reasonable doubt.

Prior to the excerpts excepted to in this division of the opinion the judge had charged: "The defendant enters upon the trial of this case, as do the defendants in all criminal cases, with the presumption of innocence in his favor, and this presumption of innocence remains with, and guards and protects him throughout his trial unless and until that presumption is overcome by competent proof and testimony sufficient to convince your minds and consciences of the guilt of the defendant beyond a reasonable doubt." Following this, the judge had defined "reasonable doubt," and had further instructed the jury as follows: "Moral and reasonable certainty is all that can be expected in legal investigation. Whether dependent upon positive or circumstantial evidence, the true question in criminal cases is, not whether it be possible that the conclusion at which the evidence points may be false, but whether there is sufficient evidence to satisfy the mind and conscience beyond a reasonable doubt."

Thus the charge given by the judge on reasonable doubt prior to the excerpts excepted to and considered in this division of the opinion was a general instruction that applied to all of the counts. *Thomas* v. *State,* 129 *Ga.* 419, 423 (59 S. E. 246).

"A correct charge presenting the law as to reasonable doubt concerning the whole case is all that one accused of a criminal

offense is entitled to. It is not incumbent upon the court to carve the case or the evidence into different propositions and apply the rule as to reasonable doubt to one or more of them severally." *Key* v. *State,* 51 *Ga. App.* 666 (181 S. E. 231); *Edenfield* v. *State,* 41 *Ga. App.* 299 (152 S. E. 597); *Pierce* v. *State,* 66 *Ga. App.* 737 (4) (19 S. E. 2d, 192); *Brown* v. *Matthews,* 79 *Ga.* 1 (4 S. E. 13).

Hence the exceptions in special grounds six, seven, eight, and nine are not meritorious.

4. Under the rule stated in the preceding division of this opinion, special ground thirteen is not meritorious.

5. Special grounds ten, eleven, and twelve of the motion for new trial allege that the judge should have amplified the general principles contained in the charge, but the defendant made no written request so to do.

The charge defined for the jury the legal principles governing the facts presented by the evidence and the defendant's statement, and when the charge is considered in its entirety, it embraced the general principles of law applicable to the case. If any amplification of the general principles, which the charge contained, had been desired, they should have been made the subject of an appropriate and timely written request. *Tabor* v. *Macon Ry. &c. Co.,* 129 *Ga.* 417 (59 S. E. 225); *Edwards* v. *Atlanta, Birmingham & Coast R. Co.,* 63 *Ga. App.* 212, 224 (10 S. E. 449). Applying this rule, none of these grounds is meritorious.

6. In special ground fourteen the defendant contends: "The court erred in admitting over movant's timely objection the State witness, Ray Whitman, to testify: 'We looked around to see if there was anyone idling and loitering around, and we did not find anyone, and so Homer (not movant, but Homer Loomis), talked to the people there at the house.' Movant objected 'to the conversation' on the ground that he was not present and the court overruled same."

The record does not disclose the conversation objected to. As we interpret the record, this ground only shows that, when the witness testified Homer Loomis, the alleged coconspirator of the defendant, "talked to the people there at the house," the defendant's counsel objected "to the conversation," and the record does

not show that the witness ever testified to such conversation. Therefore, it is, obvious that a conversation never introduced in evidence could not have been harmful to the defendant.

7. While special ground fifteen states that there was a timely objection urged, it does not state the ground of the objection. It is not sufficient to say that a timely objection was urged; if the movant fails to state what objection was urged at the time the evidence was offered or that a motion to rule it out was made during the progress of the trial, no question is presented for our determination. *Smith* v. *State*, 200 *Ga.* 188 (7) (36 S. E. 2d, 350); *McDaniel* v. *State*, 197 *Ga.* 757 (2a) (30 S. E. 2d, 612); *Battle* v. *State*, 73 *Ga. App.* 476, 481 (36 S. E. 2d, 873).

8. Special ground sixteen. The exercise of due diligence by the accused and his counsel would have enabled them to discover, before accepting a juror put upon them under the name of "Hugh A. Smith," that he was the same person whose name appeared in the bill of indictment as "Hugh A. Smith," and that he was a member of the grand jury which found the bill. *Jones* v. *State*, 95 *Ga.* 497 (1) (20 S. E. 211); *Booker* v. *State*, 183 *Ga.* 822 (2) (190 S. E. 356); *Jordan* v. *State*, 119 *Ga.* 443, 445 (46 S. E. 679). In these circumstances a failure by the accused to object at the time of the purging of the jury that a juror had served on the grand jury which returned the indictment amounted to a waiver of the disqualification.

9. Special ground seventeen. Ralph Childers, on cross-examination by the defendant, testified: "I went to the Constitution office in company with Jimmy Akin. The first time I went I didn't see anyone. The second time Lanier Waller and I went up there and saw Ralph McGill." Counsel for the defendant then asked: "What was the purpose of your going?" The State objected to the question on the ground that it was irrelevant and immaterial. The court asked counsel for the defendant: "What has that to do with this case?" Defendant's counsel stated: "He said that he had been given certain instructions by the defendant to do certain things. I want to show that he made a statement to a man that he never received any instructions to make." We construe the statement of the defendant's counsel to mean that he intended to prove that the witness had made a statement to Ralph McGill which the defendant had not

instructed him to make. This was in effect an offer by the defendant to prove by this witness that the witness had made certain statements to McGill, who had no connection whatsoever with the transaction in question, without having received any instructions from the defendant to make the statements.

Treating this as an offer of such evidence, we think that the trial judge properly refused to allow the witness to answer the question, because it was irrelevant, immaterial, and not germane to any issue presented in the case.

10. Special ground eighteen. With reference to this ground, the court certified that the following occurred: "Q. Have you been repeatedly told by the representatives of the solicitor's office, not once but more than once, that we didn't want anything but the truth? A. Yes, sir. Mr. Thomas: We object to that on the ground that it was out of the presence of the defendant. The Court: It is already in the record."

There was no motion to strike the testimony, which was already in the record, on any ground, and there was no objection, motion, or request of any kind made to the effect that the remark, "It is already in the record," amounted to an expression of an opinion by the court. These matters were sought to be raised for the first time in the motion for new trial. Such matters, thus sought to be raised for the first time, afford no ground for a new trial, as no objection to them was made and no ruling of the court was invoked in the trial court. *Fortenberry* v. *State*, 175 *Ga.* 317 (165 S. E. 215); *Pulliam* v. *State*, 196 *Ga.* 783, 790 (28 S. E. 2d, 139).

11. Special ground 19. The defendant contends: "It was error for the court, over timely objections of movant, to permit the State witness, Jimmy Aiken, on direct examination, to testify as follows: 'Q. You were the three who had access to the sanctum sanctorum or holy of holies? Mr. Thomas: We object to that because it is only for bias. Witness: They called it the S. S. Q. Do you know whether this organization, its method of organization, and its method of operation were patriotic? Mr. Thomas: We object to that. The Court: He asked if he knew. Witness: It was patterned from the Nazi party in Germany. We had storm troopers in our party. We had plans for drilling down on the farm. We had for our purpose the inciting

of race feeling so that there would be trouble and we could run in and take over.'"

This ground shows no objection, made during the progress of the trial, which was sufficient to present any question for consideration by this court. Whatever objections were urged later—not at the time the evidence was offered or during the progress of the trial—for the first time in the motion for new trial, cannot be considered by this court. *Fortenberry* v. *State,* supra.

12. In special ground twenty the defendant contends: "The court erred in refusing to grant a mistrial on timely motion therefor by movant's counsel as follows: 'Q. Did you ever hear anything said about dynamiting the auditorium? Mr. Thomas: We object to that. Q. Do you know anything about it—did you hear it from Burke or Loomis? A. Yes, sir. Mr. Thomas: I have a motion to make. (The jury retires.) Mr. Thomas: My motion is for a mistrial on account of the question of the solicitor to this witness. It was to inflame, bias, and prejudice the minds of the jury. There is nothing in the indictment about any dynamite. The indictment charges him with usurpation of police authority. There is no allegation that it was to be done by dynamite. The Court: The contention of the State is that there was a conspiracy between this defendant and others named, for the purpose of taking charge of the Municipal, County, State, and National Governments. I overrule the motion for a mistrial. (The jury returns to the box.) The negroes were holding a Baptist convention at the auditorium at the time, and they said they would go in there at night when there was not anyone there but the night watchman, and they would go in and knock the night watchman out and plant the dynamite under the auditorium, and the next night when the negroes were holding their convention, they would go in and blow it up.'"

The objection in this ground, that "we object to that," was clearly insufficient to present any question for consideration by this court. Moreover, in addition to what was stated by the judge in this ground, the testimony showed that in pursuance of the conspiracy the defendant and his coconspirators patrolled the streets in certain sections of Atlanta and were under instructions from Burke, the head of the conspiracy, to keep negroes off the street even if they had to pick quarrels with them, beat them up

and, if necessary, kill them. We think that the evidence that the conspirators were prepared to dynamite the negro Baptist convention being held in the auditorium in the City of Atlanta and to blow it up would be relevant to show that the conspirators, among whom was the defendant, were willing to go even to this length and use this method in order to aid them in their plan to usurp the police authority.

13. In special ground twenty-one the defendant contends: "The court erred in admitting the following testimony of State witness, Jimmy Aiken, over objections thereto by movant, timely made, to wit: 'Did you ever hear anything said about dynamiting the auditorium? Do you know anything about it . . did you hear it from Burke or Loomis? A. Yes, sir. The negroes were holding a Baptist convention at the auditorium at the time and they said they would go in there at night when there was not anyone there but the night watchman, and they would go in and knock the night watchman out and plant the dynamite under the auditorium, and the next night when the negroes were holding their convention, they would go in and blow it up.' "

This ground merely shows that an objection was timely made, but it does not show what that objection was. Moreover, the evidence was relevant for the reasons stated in the preceding division of this opinion.

14. In special ground twenty-two the defendant contends: "The court erred in refusing to permit movant's witness, E. O. Morris, after stating on direct examination that he was a member of the Columbians, during the time of the alleged offenses charged, to testify as follows: 'Q. State in your own language to the court and jury what induced you to become a member of the organization. The Court: What has that to do with it? Mr. Ross: We want to show the good points of the Columbian organization. The Court: We are not interested in that. We are trying this man on the issue of whether he singly or together with others did the things alleged in this indictment, and the good or bad points of the Columbian organization has nothing-to do with it.' " The evidence in this case does not show or authorize a finding that Morris was a member of the conspiracy in question or in any other way connected with the case on trial. What actuated Morris in joining the Columbians was not material in

this case. A ground of a motion for a new trial must be complete within itself.. Where complaint is made that the court refused to allow a witness on direct examination to answer the question, "State in your own language to the court and jury what induced you to become a member of this organization," and the motion does not disclose the nature of the expected answer, no question for decision is presented. *City of Jackson* v. *Wilson,* 146 *Ga.* 250 (4) (91 S. E. 63). The situation is not changed by the vague and indefinite statement of the defendant, "We want to show the good points of the Columbian organization." In short, this court is unable to say from the allegations in this ground of the motion whether the question was material or immaterial. *Sturdevant* v.. *State,* 43 *Ga. App.* 423 (2) (159 S. E. 305).

15. Special ground twenty-three assigns error upon the court's exclusion of a question propounded by defense counsel to a defense witness, as follows: "Did anything unusual ever happen on either occasion when you saw Betty Penland and James Aiken in the office at the same time?" When this was objected to, defense counsel made the following statement of intent: "We want to introduce this evidence here to break down the testimony of James Aiken. We want to show a motive for the way he has testified in this case."

This was not a statement by defense counsel of what he expected to prove by the witness. It was merely a statement of the purpose of the proposed testimony, not a statement of what the proposed testimony would be. Therefore it did not comply with the requirement of the rule discussed under the preceding ground. *Trammell* v. *Shirley,* 38 *Ga. App.* 710, 717 (145 S. E. 486), Rule 22.

16. Special grounds twenty-four, twenty-five, and twenty-seven are insufficient. The recital in each of them shows that no statement was made to the court at the time the questions were asked of the defendant's witnesses as to what the answer would be. *Griffin* v. *Henderson,* 117 *Ga.* 382 (43 S. E. 712); *York* v. *State,* 42 *Ga. App.* 453, 455 (9) (156 S. E. 733).

17. Ground twenty-six. This ground of the motion for new trial, which complains of the exclusion of the testimony for the defendant, was wholly insufficient where it failed to show the name of the witness or witnesses or a proper tender of the testi-

mony with "a pertinent question." *Williams* v. *State,* 186 *Ga.* 251, 260 (197 S. E. 838).

18. Grounds twenty-eight and twenty-nine of the motion are based upon the exclusion of certain documentary evidence, but these grounds cannot be considered by this court, since the evidence is not set forth in the ground or attached thereto as an exhibit. *Danner* v. *Johns,* 147 *Ga.* 667 (1) (95 S. E. 233); *Simpkins* v. *State,* 51 *Ga. App.* 665 (2) (181 S. E. 232).

19. Ground thirty. This ground alleges that a new trial should be awarded the defendant because the judge interrupted him in his statement to the jury. He claims that this "curtailed" his statement and his right to make the same in the manner he saw fit relative to the offense for which he was on trial. "The judge may interrupt the defendant when, in making his statement, he is stating wholly irrelevant facts, and instruct him to leave out such facts, and confine his statement to the case." *Spear* v. *State,* 45 *Ga. App.* 241 (164 S. E. 109). "The grounds show that the court did attempt to prevent the defendant from talking about matters wholly irrelevant to the issues of the case and from arguing the case to the jury." *James* v. *State,* 71 *Ga. App.* 867, 871 (32 S. E. 2d, 431).

Applying these rules to the two interruptions of the defendant, the first being that during the progress of the statement of the defendant, the judge told the defendant, "If it is irrelevant, don't go in to it. You are making a statement about this case." The second interruption was when the judge admonished the defendant: "Let's don't get to arguing this case. You are not to argue it. You are making a statement."

We do not think that either of these grounds shows that the court abused its discretion in attempting to properly confine the statement of the defendant to relevant matters.

20. The defendant gives no outline or statement of the evidence in his brief, and under the general grounds he argues two special contentions that he considers to be included in the general grounds: (1) that the Chief of Police of Atlanta, not being an ordinary policeman, was not within the purview of Code § 26-4902, and (2) that the acts charged against the defendant were acts of an ordinary policeman rather than of the chief of police.

Code § 26-4902 provides: "Any person who shall, without

authority, exercise or attempt to exercise the functions of, or hold himself out to anyone as, a deputy sheriff, marshal, policeman, constable, or other peace officer or detective shall be guilty of a misdemeanor."

" 'Policeman' has been defined as 'A member of the Police.' 'Police' is defined: 'An organized civil force for maintaining order, preventing and detecting crime, and enforcing the laws; the body of men by which the municipal laws and regulations of a city, town, or district are enforced.' Webster's Twentieth Century Dictionary, Unabridged." Green *v.* Bennettsville, 197 S. C. 313 (15 S. E. 2d, 334).

"The office of policeman or police patrolman was unknown to common law, and wherever it exists it is a creation of statute or municipal ordinance. In its generic sense it includes every member of the police force, whatever may be his grade or rank." 43 C. J. § 1315, p. 761.

In *Payne* v. *State*, 29 *Ga. App.* 156 (2b) (114 S. E. 226), it is said: "The office of a policeman of the City of Atlanta is 'an office of government or of justice,' and such a policeman is 'an officer of this State,' within the meaning of sections 270 and 271 of the Penal Code of 1910, and he is subject to be indicted under such sections for the offense of bribery."

Relative to the Atlanta policeman, the ones here in question, all members of the Atlanta police force are called "policemen." This is the name adopted as common to all. The chief of police, as well as every other member of the police force, is elected by the same official body, the Mayor and Aldermen of the City of Atlanta.

Each member of the police force holds an office because the powers conferred can be exercised only by a public officer. The chief of police, the head of the police department, holds an office whose functions consist of powers given to all policemen, that is, to all members of the police force—and some added powers. Some of the powers are derived from the fact of his being a member of the force or organization described as "policemen." But it does not follow that these powers when used by the policeman holding the office of chief of police constitute a distinct office.

The chief of police cannot be said to hold a distinct office as policeman because certain of his powers are common to those of

all policemen. When additional powers are given and used by the member of the police force who holds the office of chief of police, these powers of the chief of police are merely additional powers attached to the office of the policeman. In short, the Chief of Police of the City of Atlanta is a policeman within the purview of Code § 26-4902.

We think that a detailed discussion of the evidence in this voluminous record would serve no useful purpose, but after a very careful reading of the evidence we are convinced that the verdict convicting the defendant on counts two, three, and four of the indictment was authorized by the evidence.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*