146 So.2d 496 (1962)
Carlo MUSMECI, Individually and for the Use and Benefit of his Minor Child, Joseph Musmeci, Plaintiff, Appellee-Appellant,
v.
AMERICAN AUTOMOBILE INSURANCE COMPANY et al., Defendants, Appellants.
No. 560.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1962.
Rehearing Denied November 26, 1962.
Certiorari Denied January 14, 1963.
*497 Jackson P. McNeely and Gerald P. Fedoroff, New Orleans, for plaintiff-appellant.
Loeb & Livaudais, Stanley E. Loeb, New Orleans for defendants-appellees.
Herbert W. Christenberry, Jr., New Orleans, for defendants-appellees, Peter Villani and the American Employers' Ins. Co.
Before CULPEPPER, PONDER and McGEE, JJ.
WILLIAM H. PONDER, Judge ad hoc.
This is an action in damages ex delicto instituted by Carlo Musmeci, individually and for the use and benefit of his minor child, Joseph Musmeci, for medical expenses, loss of wages, and for personal injuries allegedly suffered by the minor, Joseph Musmeci, in an altercation with the defendant, Peter Villani, which occurred on August 17, 1958.
Named defendants herein were special police officer, Peter Villani, and his insurer on the faithful performance bond, American Employers' Insurance Company; American Automobile Insurance Company, insurer of the Board of Levee Commissioners of the Orleans Levee District; Wallace LeBrun and his liability insurer, American Automobile Insurance Company.
Plaintiff alleges that on or about the date that the injury occurred, his son was a patron in a Lakefront restaurant known as "Krupp's" or Shelter House #1. That "Krupp's" is operated as a bar and restaurant by defendant Wallace LeBrun and is owned, maintained and policed by the Board of Levee Commissioners of the Orleans Levee District. That at the time and place the minor, Joseph Musmeci, was wrongfully accused of pouring beer on the floor and was asked to leave the premises. That the special officer on duty, without warning, struck and injured the minor, breaking his jaw, and alleging other acts of negligence on the part of the police officer acting within the scope of his employment as a special officer for the Board of Levee Commissioners of the Orleans Levee District.
The Board of Levee Commissioners of the Orleans Levee District, which will be hereinafter referred to as the Levee Board, had a policy of liability insurance with the American Automobile Insurance Company. Exception of no right or cause of action was filed by defendant, American Automobile Insurance Company, which was sued in direct action as insurer, which in reality is urged as an exception of no cause of action. This exception was overruled by the lower court.
Answer was filed by the insurer of the Levee Board admitting its policy of insurance, but otherwise generally in denial. There was alternative plea that the altercation and injury resulting therefrom were caused by and resulted from the misconduct *498 and unlawful acts of the minor, Joseph Musmeci.
The answer of Peter Villani and his surety, American Employers' Insurance Company, is one of general denial, with the affirmative allegation of provocation on the part of the minor. Alternatively these defendants plead contributory negligence and wilful misconduct.
This case was tried before a jury in the lower court and resulted in a verdict and judgment for medical expenses, personal injuries and loss of wages in solido against American Automobile Insurance Company and Peter Villani. In accordance therewith, formal judgment was duly read, rendered and signed in open court February 1, 1961. From this judgment plaintiff has devolutively appealed on the ground of inadequacy. The American Automobile Insurance Company has appealed devolutively from the judgment overruling its exception of no cause of action and from the trial on the merits. Defendant Peter Villani has not appealed.
The most serious question presented on this appeal is on the exception of no cause of action. This exception is based on the question of whether the defense of sovereign immunity is available to the public liability insurer of a state agency or subdivision when the insurer has been sued in a tort action by direct action under the provisions of LSA-R.S. 22:655, without joining the assured agency as a party defendant. Eminent counsel for insurer concedes in his brief that the defense of governmental immunity is personal to the Levee Board and may not be pleaded by its insurance carrier. However, he argues that Respondeat Superior does not apply to the sovereign or its agencies and that a policeman is not an agent capable of binding the governmental agency for his torts. It is urged that under the holdings of Duree v. Maryland Casualty Company, 238 La. 166, 114 So.2d 594, and Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793, an injured claimant cannot have a cause of action against the Levee Board even where the Legislature grants permission to sue the State or its agency. That therefore there is no cause of action against the insurer of the Levee Board under the provisions of LSA-R.S. 22:655, that reads in part as follows:
"It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable * * *."
In support of this position, defendant insurer cites and relies upon the following authorities: Hall v. City of Shreveport, 157 La. 589, 102 So. 680; City of New Orleans v. Kerr, 50 La.Ann. 413, 23 So. 384; Planters' Oil Mill v. Monroe Waterworks & Light Co., 52 La.Ann. 1243, 27 So. 684; Joliff v. City of Shreveport, 144 La. 62, 80 So. 200; Howard v. City of New Orleans, 159 La. 443, 105 So. 443; Taulli v. Gregory, 223 La. 195, 65 So.2d 312; Prunty v. City of Shreveport, 223 La. 475, 66 So.2d 3; Duree v. Maryland Casualty Company, supra, and Stephens v. Natchitoches Parish School Board, supra.
Taking up these cases in order, the case of Hall v. City of Shreveport is clearly distinguishable from this case. That case presented the question of whether a widow and minor children of a policeman who was killed while discharging his duties for the City of Shreveport were entitled to benefits under the Workmen's Compensation Statute. Although the Supreme Court discusses the doctrine of sovereign immunity and the distinction between governmental and proprietary functions, we do not think this case is apposite.
The case of City of New Orleans v. Kerr has only remote relevance to this case. It simply held that although a municipal corporation in its public character was not answerable for the nonfeasance or malfeasance of its public agents, where the city let out by contract a portion of the police powers of the city for the maintenance of *499 a livestock pound and that it would furnish police protection to enable the contractor to perform his duty, the city was liable for breach of the contract in failing to furnish the stipulated police protection.
The case of Planters Oil Mill v. Monroe Water Works holds more strongly in favor of the imposition of liability upon the insurer of the Levee Board than to relieve it of responsibility. It presents an interesting rough analogy to the case at hand. The exception filed in that case by the City of Monroe was sustained and the City was exonerated from liability for the nonfeasance or malfeasance of its officials in connection with the performance and fulfillment of the contract. Observing that the contract was intended by both parties to inure to the benefit of the inhabitants of the town and that the stipulations therein were in their favor, the court concluded that a sufficient cause of action against the company was disclosed to send the case to trial on its merits.
The case of Joliff v. City of Shreveport held that a suit against the City of Shreveport and the Commissioner of Public Safety for unlawfully invading an establishment, that the police officers exercised a governmental function and, in the absence of a positive statute to the contrary, connot by their tortious acts render the municipality liable in damages ex delicto.
In the case of Howard v. City of New Orleans it was held that a municipality in the exercise of a governmental function is not liable in damages for the negligence of its agents or appointees in the absence of some exception to the rule. To the same effect were the decisions in Prunty v. City of Shreveport and Taulli v. Gregory. The latter case held that an exception as to personal liability of the arresting officer, Mayor and Marshal, for malicious prosecution was not sound and that a cause of action was stated as against them.
The contention of the defendant insurer, simply stated, is that unless the injured party has a cause of action against the insured, he cannot maintain a suit against the insurer, even though he might have a right of action. The view that the sovereign is immune from liability without its consent for its torts and the torts of its officers and employees is not before us, because the Levee Board has not been joined as defendant and there has been no authorization by the Legislature for suit against the Levee Board in this instance.
The classic distinction which is recognized in Louisiana between governmental powers, functions and responsibilities in the exercise of which the State, its agencies and subdivisions are not liable for tortious conduct, and private or proprietary activities for which there may be liability for tortious conduct, is suggested by the facts in this case. The Board of Levee Commissioners of the Orleans Levee District is a corporate body politic, a special State agency or subdivision, created by Act of the Legislature. LSA-R.S. 38:1231 et seq. LSA-Const. Art. 4, Sect. 4. Board of Levee Com'rs v. Whitney Trust & Savings Bank, 171 La. 28, 129 So. 658. The facts in this case reveal that the Levee Board owned the bar and restaurant known as "Krupp's" or Shelter House #1, which is leased to one of the original defendants, Wallace LeBrun. This suit was dismissed as to Wallace LeBrun and his insurer prior to trial.
In view of the complaints as to previous difficulties, the Levee Board furnished as a special police officer the defendant Peter Villani to protect the Levee Board property and keep the peace. Although maintaining peace and order might be considered a distinctive governmental function, it was in this situation an adjunct of, and directly related to the operation of the restaurant and bar, which was not a governmental function of the Levee Board. This police officer was engaged in policing a corporate, private or proprietary function of the Levee Board on this occasion. However, we do not find it necessary to reach a determination *500 of that issue for the disposition of this exception.
It is well established in our law that the defense of immunity of governmental agencies and charitable institutions for torts of their agents and servants is a defense which is personal to the institution or sovereign itself and cannot be availed of or pleaded by the defendant insurance company. Lusk v. United States Fidelity & Guaranty Co., La.App., 199 So. 666; Messina v. Societe Francaise De Bienfaissance, Etc., La.App., 170 So. 801; Brooks v. Bass, La.App., 184 So. 222; Perrodin v. Thibodeaux, La.App., 191 So. 148; Edwards v. Royal Indemnity Co., 182 La. 171, 161 So. 191; Rome v. London & Lancashire Indemnity Co. of America, La.App., 169 So. 132.
A surety or a codebtor in solido may not plead exceptions that are merely personal to the debtor or codebtor. LSA-C.C. Articles 3060 and 2098. The defense of such a serious immunity as that of a husband against a suit in tort by his wife for personal injuries is not available to the liability insurer under the statute providing for direct action. Edwards v. Royal Indemnity Co., 182 La. 171, 161 So. 191, 192, 195. In this case the court held:
"Can it be said that the Legislature intended to include defenses which are purely personal between the insured and the injured party, or did it mean to confine the defenses to those which are necessarily connected with or grew out of the accident, or arose from the lawful terms and conditions of the policy?
"* * * It is, therefore, our opinion that the Legislature intended to give the insurer the right to plead defenses which it could urge against the insured, but not defenses which are purely personal between the insured and claimant, and in no way growing out of or connected with, the accident or policy."
Under the statutory provision for direct action, the insurance company has only such defenses in a direct action brought by the injured party as it would have in an action brought by its insured. McDowell v. National Sur. Corp., La.App., 68 So.2d 189 (Citing several supporting cases.)
Defendant insurer relies very strongly upon the comparable cases of Duree v. Maryland Casualty Co., supra, and Stephens v. Natchitoches Parish School Board, supra, in which the Supreme Court held that legislative authorization to sue the State, or agency, or subdivision, or corporation thereof, in an action ex delicto, constituted merely a waiver of immunity from suit, but did not waive governmental immunity from liability for the negligence of an employee. The Supreme Court, in those cases, also held that any legislative waiver of this immunity would be an unconstitutional exertion of the legislative power. Under Article 3, Section 35 of the Constitution of Louisiana of 1921, as amended in 1946, it was held to preclude legislative waiver of immunity from liability.
Since in this case there has been no suit against the Levee Board and no legislative waiver from suit or liability, we conclude that the decisions in the Duree and Stephens cases are not particularly pertinent to the issue before the court and that those decisions need not lead us to the conclusion urged by the defendant. It might also be noted that in the Duree case the liability insurer paid its full policy limits and did not appeal.
Defendant's insurer seems to attach particular significance to the words embraced in LSA-R.S. 22:655 "to whom the insured is liable". In Black's Law Dictionary the word "liable" is defined to mean "bound or obliged in law or equity; responsible; chargeable; answerable; compellable to make satisfaction, compensation or restitution." We do not find in the word "liable" or from any other authority an implication or suggestion that when the Legislature *501 amended this section of the Revised Statutes by Act 125 of 1958, it intended to exclude from coverage in the statute providing for direct action, any class of claimants, or that it was designed to relieve the liability insurer of exempt public agencies from liability for tortious acts of the agency or its employees.
Although it is not ordinarily liable therefor unless it has voluntarily assumed such liability, the State has the capacity to commit tortious acts by the conduct of its agents and employees. In appraising the conduct of the State, the standards which it has created for others may be applied. Like private individuals, the State is bound to exercise due, ordinary or reasonable care under the circumstances, and where the State or its agent or employees has failed to exercise the requisite care and caused injury, it is guilty of an act of negligence. Under Article 3, Section 35, of the Constitution of Louisiana, the State may be sued only with its permission. This does not mean that conduct which would be tortious in others is not tortious when committed by the State or its agents or employees, but is merely an expression of public policy. Lewis v. State, 207 La. 194, 20 So.2d 917; 81 C.J.S. States § 129, p. 1135.
We do not agree with the contention of defendant insurer that the Duree case or Stephens case mean that because the Legislature could not at that time constitutionally waive the State's immunity to liability, that the claimant could not have a cause of action against the State and that it would not be guilty of negligence and its conduct would not be tortious. In our view, that is neither the intended or unintended import of those decisions. It is observed that Article 3, Section 35 of the Constitution has been amended by Act 621 of 1960, which was approved as a constitutional amendment on November 8, 1960, and which obviates the results of the Duree and Stephens cases as to the authority of the Legislature to waive governmental immunity.
In the statute providing for direct action the Legislature clearly stated the public policy of this State, that all liability policies are executed for the benefit of injured persons and his or her survivors or heirs, and that the purpose of all liability policies is to give protection to all insureds for any legal liability such insureds may have, such as for a tort-feasor, within the terms and limits of the policy.
Our law is clear that the statutory authority is given the injured party for immediate right of action against the insurer of the party responsible for the injury and expresses the public policy of this State, that an insurance policy against liability is not issued primarily for the protection of the insured, but is for the protection of the public. The liability of the insurance company remains contingent and is dependent upon proof of the negligence or tortious conduct of the offending party. Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351; Continental Casualty Co. v. Quebedeaux, 5 Cir., 234 F.2d 241; West v. Monroe Bakery, 217 La. 189, 46 So. 2d 122; Lewis v. Manufacturer's Casualty Insurance Co., D.C., 107 F.Supp. 465.
Our learned brother of the lower court decided this exception upon the authority of Rome v. London & Lancashire Indemnity Co. of America, La.App., 169 So. 132. Defendant contends that the Supreme Court of Louisiana in its decision of the Rome case reported in 181 La. 630, 160 So. 121, held that the City Park Improvement Association was not entitled to governmental immunity for reasons peculiar to that case, because its operations were conducted for profit. The opinion of the Supreme Court was predicated solely upon the allegations of the petition, which, taken as true, reveal that the operations of the City Park Improvement Association were conducted for profit and did not express any view upon the issue presented in this case. In a short and concise concurring opinion of Chief Justice O'Neill, he stated in effect that it was immaterial whether the City Park Improvement Association could be *502 sued or not, for in any event the insurance carrier was liable; that the very purpose of such insurance is to relieve the municipality, or municipal agency, and hence the public, of liability in such cases.
After trial was had on the merits in that case, it came on again before this court on appeal (169 So. 132) on the issue of governmental immunity and whether or not the defense of immunity was available to the liability insurance carrier of the City Park Improvement Association. Judge McCaleb, now Justice McCaleb of the Supreme Court, who was a member of this court at the time, very succinctly and clearly stated:
"It is too plain for extended argument that the defense of immunity from liability because of the engagement in the operation of a governmental function is one which is purely personal to the public corporation. The exemption is based on reasons of public policy, and, where the public body deems it wise to nevertheless protect the people by insuring its activities against negligence in the operation thereof, it is manifest that to allow the paid insurance carrier to escape liability of such a ground would be to accomplish a miscarriage of justice.
"The defendant has received from the New Orleans City Park Association a valuable consideration. If the defense of immunity from suit is available to it in this case, this insurance company is, in truth and in fact, receiving public moneys without consideration, for we cannot imagine any case sounding in tort which might successfully be prosecuted against it under the insurance contract.
"We believe that, while it is against the public policy of the state to allow the New Orleans City Park Association to be sued in tort, it is equally against public policy, common sense, and inapposite to the intention of the Legislature, as reflected by Act No. 55 of 1930, to allow the defendant insurance company to escape liability on the ground contended for." Rome v. London & Lancashire Indemnity Co. of America, 169 So. 132, 137."
We are therefore of the opinion that this Rome case is a correct expression of the public policy and the law on this issue, and that the defense of governmental immunity to tort liability that is available to the insured governmental body, agency, or subdivision is not available to and cannot be pleaded by the public insurance carrier. We might further observe here that as a matter of equity it would be incongruous and unconscionable, that with the many functions and activities that are performed by various governmental agencies, that countless thousands of dollars of public money should be paid to liability insurance carriers for the protection of the public, and when a tortious act is committed by the governmental body, agency, subdivision or its agents or employees, that no cause of action might be pleaded and sustained as a defense because there might not be a cause of action under governmental immunity which is available to the governmental body, agency or subdivision.
We do not find that the decisions of the Duree and Stephens cases have modified the principles of law and do not compel or militate in favor of a decision different from that reached in the Rome case. We find that the lower court correctly overruled the exception of no right or cause of action.
This leads us to a consideration of the facts in this case, which are fairly simple. The evidence reveals that on the date of the injury the minor, Joseph Musmeci, together with two friends, entered Shelter House #1, commonly known as "Krupp's", which was a restaurant and bar operated by Wallace LeBrun on property belonging to the Levee Board. There is some conflict in the testimony as to exactly what transpired, but it appears that after drinking one or two beers, Joseph *503 Musmeci turned his bottle over to indicate to the others that it was empty, and some of the froth from the beer was spilled on the floor. Mrs. Wallace LeBrun, who assisted her husband in the operation of the bar and served as a waitress, remonstrated with him and reached for the bottle that he held in his hand. The bottle dropped to the floor and broke. She then called to her husband to seek to evict the minor and his friends. At this stage, defendant Peter Villani, who was a special police officer of the Levee Board, came up and pushed the minor from behind. As the minor turned to face him, he was struck on the jaw by the police officer, and as a result suffered the injury consisting of a broken jaw.
We might note here that at the time the minor was 17 years of age, five feet four inches tall, and weighed approximately 125 pounds. The police officer weighed approximately 250 pounds. The defense of the police officer is that the minor was attempting to strike him with a bottle and that he acted in self defense. We are not impressed with this testimony, as the minor and some disinterested witnesses testified that he did not have a bottle in his hand at the time the blow was struck. We find from the evidence that the attack made by the police officer was entirely unprovoked and unjustified under the facts as found in the record.
Having found that there was a tortious act committed by the police officer in this unjustified attack, we must determine the amount of damages that the plaintiff is entitled to recover.
After the altercation, the minor, who was dazed, walked out of the building and was subsequently carried to Charity Hospital. He received treatment at that institution in that his mouth was closed and wires were inserted through the gums to hold the jaw and teeth in place, and during which time he could eat no solid foods. He received treatment about once each week for approximately 7 or 8 weeks, during which time there was considerable pain and suffering. The medical bills are admittedly the sum of $132.50.
The minor was a sign painter with a gross pay of $1.00 per hour or $40 per week and he was incapacitated as a result of the injury for about nine weeks.
The jury in this case awarded plaintiff the full amount of the hospital bills, together with the loss of wages in the amount of $200, and personal injuries in the sum of $100; which judgment was signed by the judge of the lower court. We find that the amounts awarded for loss of wages was inadequate under the evidence and was grossly inadequate as to personal injury. The evidence in the record substantiates that the plaintiff should recover for the admitted hospital bills and that the judgment should be amended to increase the amount from $200 to $360 for loss of wages. We find that the judgment in favor of the plaintiff for personal injuries of the minor, for his use and benefit, in the sum of $100 should be amended and increased to $2500 and recast.
For the reasons herein assigned, the judgment of the trial court appealed from is amended and recast to read as follows:
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Carlo Musmeci, individually, and against the American Automobile Insurance Company and Peter Villani in solido in the full sum of $132.50 for medical expenses and the sum of $360 for loss of wages of his minor child, Joseph Musmeci, together with five percent per annum interest thereon from judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Carlo Musmeci, for the use and benefit of his minor child, Joseph Musmeci, and against American Automobile Insurance Company and Peter Villani in solido in the full sum of $2500, together with five percent per annum *504 interest thereon from judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of the district court are assessed against the defendants Peter Villani and American Automobile Insurance Company. All costs of this appeal are assessed against the appellant, American Automobile Insurance Company.
As amended and recast, the judgment appealed from is affirmed.
Amended and affirmed.