HOOD, Judge.
This is a tort action instituted by Mary Faye Constance, in which plaintiff claims damages alleged to have been sustained by her as the result of a motor vehicle collision. One of the automobiles involved in the collision was owned by plaintiff’s mother and was being driven by plaintiff, and the other was owned and was being driven by Charles R. Murphy. The suit was instituted against Murphy, who was uninsured, and against Traders & General Insurance Company, the liability insurer of the car which plaintiff was driving. Plaintiff’s claim against Traders & General is based on an “uninsured motorist” provision of the policy which it had issued to plaintiff’s mother, covering the automobile which plaintiff was driving.
Traders & General filed an answer and an intervention. In its intervention this defendant prays that judgment be rendered in its favor and against Murphy for any amount which Traders & General may be condemned to pay to plaintiff.
The case was tried by jury, and pursuant to a verdict rendered by the jury judgment was rendered by the trial court in favor of plaintiff and against defendants, condemning defendants to pay unto plaintiff the total sum of $1,500.00. Judgment further was rendered in favor of intervenor, Traders & General, and against defendant Murphy, for the same amount. Plaintiff has appealed, contending that the amount of the award should be increased. Traders & General has answered the appeal, praying that the judgment appealed from be affirmed, but in the alternative, and in the event the amount of the award should be increased, that judgment be rendered in its favor and against Murphy for the total amount which Traders & General may b« condemned to pay to plaintiff.
The sole question presented on this appeal relates to quantum, plaintiff contending that the amount of the award should be increased and defendants contending that it should not be disturbed.
The accident occurred on June 22, 1963. Plaintiff was driving her mother’s automobile on a public highway in Camieron Parish at that time, and while doing so, it became involved in a head-on collision with the Murphy car. The impact caused plaintiff to be thrown forward in the automobile with considerable force, and as a result of the accident she sustained personal injuries.
Plaintiff was examined by Dr. Cecil W. Clark, a general practitioner, within a few minutes after the accident occurred, and she has been under the treatment of Dr. Clark continuously since that time. In his initial examination Dr. Clark found that *920 plaintiff had a cerebral concussion, bruises and swelling of the left lower jaw, bruises of the left forearm, right elbow and left wrist, and she complained of pain over the anterior chest region. Although an x-ray examination made at that time revealed no fractures, additional x-rays taken two days later disclosed that plaintiff also had sustained a non-displaced fracture of the mandible, or lower jaw, as a result of the accident. Dr. Clark thereupon referred her to Dr. John D. Lewis, a dental surgeon, for treatment of the injury to her jaw, although Dr. Clark continued to treat her, and was still treating her at the time of the trial which took place about eight months after the accident occurred.
Dr. Lewis hospitalized plaintiff from June 28 until July 1, 1964. During that period, and as part of the treatment of the fractured jaw, he wired plaintiff’s jaws together in such a manner that they were immobilized, and they remained wired together for four weeks. While her jaws were immobilized in that manner plaintiff could not open her mouth, she could not eat solid foods, and for nourishment it was necessary for her to consume only liquids. Dr. Lewis explained that in wiring plaintiff’s jaws together the stainless steel wires were fitted underneath the gum line and in between the teeth, but that it was not necessary to pierce the gums. He considers this procedure as being minor surgery.
After the wires were removed it was discovered that plaintiff had also sustained a rupture of the cartilage or disk of the temporomandibular joint on the left side, causing hypermobility of the joint. This condition caused plaintiff at that time, and still causes her, to experience pain when she opens her mouth wide, when she eats hard food, or when she laughs or yawns. Occasionally her jaw slips out of place or locks when she opens her mouth wide or yawns. She experiences a “gritting noise” on movement of her jaw, and she frequently has an “earache,” which is one of the •recognized symptoms of this jaw condition.
In order to relieve some of the pain, Dr-Lewis constructed a plastic “splint” for her to wear in the roof of her mouth. This-appliance prevents her mouth from closing completely, and it thus relieves her from some of the pain which she otherwise might have. This splint has been worn by-plaintiff continuously since it was prescribed for her, except that she removes it while eating.
Dr. Clark, in testifying as to the nature- and extent of plaintiff’s injuries, stated::
“She has this jaw thing — damage to the jaw, with the rupture of this articular cartilage. She will have trouble. It is a permanent type thing. She will' be bothered with it the rest of her life.”
Dr. Lewis testified that when he last saw plaintiff, on January 6, 1964, she had no-complaints relating to her jaw, her complaints being only of headaches which he did not relate to the injury, so he discharged her at that time. When asked how long plaintiff would have to use the “splint,”' however, he testified that “it may be months- and may be years.” In response to an inquiry as to what percentage of disability plaintiff has now, he said:
“That’s difficult to say, but being the fact that she can’t yawn or open too wide and chew hard, you would have to come to maybe twenty to twenty-five percent.”
Both of the treating doctors indicated that further treatment, consisting of injections or of re-wiring the jaws for an additional period of time or of physiotherapy, can be administered to plaintiff, which treatment may relieve her symptoms. Dr. Lewis feels that with proper treatment plaintiff can be completely and permanently relieved within a period of from three to six months. Dr. Clark is less optimistic, his testimony being, “this type of injury is permanent and the treatment of it is not very successful.”
All of the injuries which plaintiff sustained, other than the injury to her jaw, *921 were of a relatively minor nature and she had completely recovered from them by the time of the trial. At the time of the accident plaintiff was employed to work only •one day per week in a motel. She was unable to work for four weeks after the accident occurred, and thus she missed four ■days of work, but since that time she has resumed her employment and she has been able to engage in substantially all of the activities which she engaged in prior to the accident.
As a result of the accident plaintiff sustained special damages, consisting of loss of wages and medical and hospital bills, amounting to the aggregate sum of $717.-47. By deducting that amount from the total award made to plaintiff in the trial court, it is apparent that she was awarded only $782.53 for pain and suffering and for the injuries which she sustained. Considering the nature of plaintiff’s injuries, we think the award is manifestly insufficient and is all out of proportion with previous awards made for somewhat similar injuries.
In Musmeci v. American Automobile Insurance Company, La.App. 4 Cir., 146 So.2d 496, plaintiff suffered an injury consisting of a fractured jaw which was treated by wiring the jaws together, as was done in the instant suit. He apparently recovered completely in seven or eight weeks, without any joint difficulties, and in addition to the special damages which were proved an award of $2,500.00 was made for his personal injuries.
In Ropollo v. State, La.App. 1 Cir., 23 So.2d 374, where the same type of injury was sustained and the period of recovery was about five weeks, an award of $2,000.-00 for physical injury, pain and suffering was affirmed.
The injuries sustained by the plaintiff in the instant suit are more serious than those sustained in either of the two cited cases. In our opinion an award of $3,500.00 for the physical injuries and for the pain and suffering sustained by plaintiff would be fair and adequate. In addition thereto plaintiff is entitled to recover the special damages which she sustained, amounting to the sum of $717.47, making a total award of $4,217.47. We think the judgment appealed from should be amended by increasing the award to that amount.
No issue is raised as to the right of Traders & General to judgment against defendant Murphy for the amount which Traders & General is condemned to pay in this suit. That part of the judgment appealed from which is in favor of Traders & General and against Murphy, therefore, must also be amended by increasing the amount of that judgment to the same sum which is being awarded to plaintiff.
For the reasons herein assigned, therefore, that portion of the judgment appealed from which is in favor of plaintiff, Mary Faye Constance, and against the defendants, Traders & General Insurance Company and Charles R. Murphy, in solido, is amended by increasing the amount of the award to the sum of $4,217.47, with legal interest thereon from date of judicial demand until paid, and all costs of this suit. That portion of the judgment appealed from which is in favor of intervenor, Traders & General Insurance Company, and against defendant, Charles R. Murphy, is amended by increasing the amount of that award to the sum of $4,217.47, with legal interest from date of judicial demand until paid, and all costs of these proceedings. In all other respects, and except as herein specifically amended, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendants-ap-pellees.
Amended and affirmed.