JOSÉ LUIS GARCÍA ET AL., Plaintiffs and Appellants, *v.* NORTHERN ASSURANCE CO., Defendant and Appellee.

No. R-64-147.     Decided April 13, 1965.

*Martín Almodóvar Acevedo* and *Eugenio S. Belaval, Jr.,* for appellants. *Rieckehoff, Calderón, Vargas & Arroyo* for appellee.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

On April 13, 1962 Edmee Vázquez slipped on the sidewalk in front of No. 1025 of William Jones St., Río Piedras. She suffered damages. Together with her husband she sued the Government of the Capital. Then they abandoned the action.

On August 28, 1962 they filed a complaint against the Northern Assurance Co., insurer of the Government of the Capital. Defendant requested the dismissal of the complaint. It alleged that the Government of the Capital was not served notice of the accident within 90 days of the occurrence thereof, as required by § 96 of the Municipal Law in force, 21 L.P.R.A. § 1603 (1961 ed.).[1] Since defendant set up this

---

[1] The aforecited provision provides:

"(a) Any person having any claim against a municipal corporation for damages to the person or property, caused through the fault or negligence of the municipal corporation, shall present to the chief executive of the municipality a written notice setting forth clearly and concisely the date, place, cause and general nature of the damage sustained, the amount of monetary compensation or the type of remedy adequate to the damage sustained, the names and addresses of his witnesses and the address of the claimant as well as the place where he received medical treatment for the first time.

"(b) Said notice shall be delivered to the chief executive of the municipal corporation by sending it by registered mail or through per-

sole question and failed to present the policy in evidence, we must presume that if it does not prevail, the terms of the policy make the company liable once the fault and negligence of the municipality is established.

The trial court granted the motion. In deciding it, it stated that:

"Plaintiff neither alleged nor showed that she strictly complied with the statute in force (21 L.P.R.A. § 1603) which requires notification to the municipality within the 90 days following the occurrence of the accident.

"Said requirement is mandatory and must be considered of substantive nature. *Mangual* v. *Superior Court* (May 31, 1963, P.R.R.).

---

sonal service on him or in any other proper manner recognized by law.

"(c) The said written notice shall be presented to the municipal chief executive within ninety days following the date on which the claimant learned of the damages he is claiming for. If the claimant is mentally or physically incapacitated to give said notice within the term prescribed, he shall not be subject to the limitation above provided but shall be bound to give said notice within thirty days following the date on which such incapacity ceases.

"(d) If the aggrieved party is a minor, or is under guardianship, the person exercising the patria potestas or custody of the minor, or the guardian, as the case may be, shall be under obligation to make known the claim within ninety days following the date on which he had knowledge of the damages claimed for. The foregoing shall not prevent the minor or the ward from giving the said notice within the term prescribed, motu proprio, if the person having the patria potestas, custody or guardianship shall fail to do so.

"(e) No judicial action may be instituted against a municipal corporation for damages caused by the fault or negligence of the latter if written notice thereof is not given in the form and manner and within the terms prescribed in this subtitle. The foregoing applies only to damages caused by any municipal corporation subsequent to the effectiveness of this subtitle.

"(f) The term 'municipal corporation' includes all the municipalities of Puerto Rico and the Capital of Puerto Rico; and the term 'chief executive' includes the mayor of any municipality of Puerto Rico and the city manager of the Capital of Puerto Rico.

"(g) This section shall not modify in any way whatsoever, for such claimants as shall comply with its provisions, the statute of limitation fixed by subsection 2 of section 1868 of the Civil Code, 1930 ed., section 5298 of Title 31."

"The fact of suing the insurance company instead of the Municipality does not alter the legal situation set forth, since the liability of the insurer is of a subsidiary nature pursuant to the insurance policy, since the company would only be liable when the assured is legally obligated to pay for having incurred liability."

Pursuant to the foregoing it rendered judgment dismissing the action. We agreed to review it.

We held in *Mangual* v. *Superior Court*, 88 P.R.R. 475 (1963) that "in Puerto Rico compliance with the notice requirement [to the municipality] is a condition precedent of strict compliance in order to be able to sue the municipality." Now it only remains to determine whether the failure to notify the municipality precludes the direct claim by the insurer.

Until the year 1952 § 175 of the insurance law of Puerto Rico provided that: "When the person causing the damage is insured against the accident which caused the loss or damage, and in the case where the insurance policy was issued in favor of a third person, the action to claim such indemnity as may be proper may be presented jointly against the insured person and the insuring company. . . ." In *Water Resources Authority* v. *Irizarry*, 72 P.R.R. 601 (1951) we construed the preceding provision in the sense that for lack of personal service to the assured judgment could not be rendered against the insurance company. We ruled that § 175 was "a purely procedural device to avoid two suits; that it does not create any new substantive rights; that a suit against the insurance company alone will not lie; and that a condition precedent to liability of the company is a finding of liability of the assured."

Evidently concerned with the results we stated at the end of *Irizarry* that "perhaps the Legislature should amend § 175 to permit suit against insurance companies alone under

these circumstances; obviously, the failure to serve the defendant personally is a windfall for the company."

In the year 1951 we decided the case of *Irizarry*. In the year 1952 the Legislative Assembly amended § 175 to read as follows: "When the person causing the damage is insured against the accident which caused the loss or damage, and in the case where the insurance policy has been issued in favor of a third person, the action to claim such indemnity as may be proper *may be presented against the insurance company only, or jointly against the insured person and the insurance company.*" (Italics ours.)

Explaining in the Legislature the purpose of the amendment to § 175 in the year 1952, Mr. Arcilio Alvarado, Chairman of the Civil Judiciary Committee at that time stated:

"At the present time, as provided by the law, in order to sue the insurance company the assured must be joined in the action. Otherwise the company cannot be sued.

"Under this technical provision actions for damages by a son against his father have failed in the courts, notwithstanding there existed an insurance policy covering the risk. As the son was precluded from suing the father, although there was an insurance company liable, the company escaped the liability.

"If this bill should become a law, it not being necessary for the assured to sue jointly with the insurance company, may be that action and others would succeed because the action could be filed directly against the insurance company for the risk established in the policy." Minutes of the House of Representatives (1952) at p. 760.

In considering the amendment of 1952 in *Pérez* v. *Maryland Casualty Co.*, 78 P.R.R. 453, 457–58 (1955) we stated that "there is nothing in the amendatory language or its legislative history to suggest that the Legislative Assembly meant to go further and to create, as in Louisiana, 'a separate and distinct cause of action against the insurer' dif-

ferent from the cause of action against either the tort-feasor alone or together with the insurer."

And further in *Pérez* at p. 458 we stated that "The 1952 amendment merely changed the procedure by which the subsidiary liability of the insurer, which was still contingent on the liability of the assured, could be established; it may now be determined by suing the insurer alone. It is still necessary to prove the assured's negligence and primary liability even though the suit is in form against the insurer alone."

Although it is true that in the explanation of the amendment made by the chairman of the Committee which studied the proposed Bill, there is an indication that the Legislative Assembly had the intent of adopting the Louisiana rule for the purpose of creating a separate and distinct action against the insurer, evidently the amendment approved did not admit of such construction.

In *Pérez* we explained the rule prevailing in Louisiana. In footnote 3 we stated that "A Louisiana statute gives the plaintiff in an automobile accident case at his option '. . . a right of direct action against the insurer . . . .' And the '. . . said action may be brought against the insurer alone or against both the insured and insurer, jointly and in solido.' La. Rev. Stat., Tit. 22, § 655. The scope of this statute was recently described in *Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 99 L.ed. 83, 85–6: '. . . the Louisiana courts have differentiated between actions brought by an injured party against the insurer alone and those brought against either the tortfeasor alone or together with the insurer. In the former action, the insurer is foreclosed from asserting defenses such as coverture, normally available to the tortfeasor. *Edward v. Royalty Indemnity Co.*, 182 La. 171, 161 So. 191. Similarly, the insurer is severely restricted in advancing technical defenses based upon the terms of the policy, such as a failure of notice, when the injured party brings

a direct action. *Jackson* v. *State Farm Mut. Auto. Ins. Co.,* 211 La. 19, 29 So.2d 177. While either type of action encompasses proof of the tort-feasor's negligence, in the separate suit against the insurer a plaintiff must also establish liability under the policy. The Louisiana Courts have characterized the statute as creating a separate and distinct cause of action against the insurer which an injured party may elect in lieu of his action against the tort-feasor. *West* v. *Monroe Bakery,* 217 La. 189, 46 So.2d 122; *Jackson* v. *State Farm Mut. Auto. Ins. Co.* (La.) *supra.*' "

Shortly after a month of our decision in *Pérez,* we stated in *Landol* v. *Colón,* 78 P.R.R. 572 (1955) in distinguishing our statute from that of Louisiana, that "The theory of the cases interpreting the Louisiana statute to this effect is that the cause of action of the plaintiff against the insurer is different and separate from his cause of action against the insured" and we reiterated that our § 175 "permitting a suit against the insurer alone, was only procedural and did not, as in Louisiana, create a separate and distinct cause of action against the insurer."

We acknowledged, however, that "the Legislative Assembly has clearly evinced its intention by amendments of § 175 to eliminate some of the technical defenses by insurance companies which do not affect the merits of the case." But we stated that "since in Puerto Rico the cause of action of the plaintiff against an insurance company continues to be subsidiary and contingent to the liability of the insured to the plaintiff, the rule here, unlike that in Louisiana, is that the lack of a reasonable notice of the occurrence of the accident continues under the proper circumstances to be an adequate defense by the insurance company."

Having stated the foregoing in *Landol,* we commented in footnote 1 that "we are aware that at times this rule operates unjustly to deprive a plaintiff of an otherwise valid cause of action against insurance companies. But whether § 175

should be further modified to establish a doctrine in Puerto Rico akin to the Louisiana rule as to notice and other defenses is a matter for the Legislature—not this Court—to determine."

Thus in *Pérez* and *Landol* we clearly set forth the scope of the rule prevailing in Louisiana and stated that it is incumbent on the Legislative Assembly to determine whether § 175 should be amended again to establish the rule of that state in our jurisdiction.

In 1957, evidently inspired by the preceding comment, the Legislative Assembly, in approving a new Insurance Code, incorporated a fundamental provision just like the one prevailing in Louisiana.[2] It provides:

"Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine, not only the

---

[2] At the present time the Louisiana provision in the pertinent part reads:

"The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident of injury occurred within the State of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this State. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this State." 15A LSA— R.S. 22:655 (Supp. 1965).

liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured." Section 20.030, 26 L.P.R.A. § 2003 (1958 ed.).

Aware of the scope of the Louisiana rule our Legislative Assembly adopted a statute substantially identical to that of said state. The validity of the Louisiana statute and of its construction by the Supreme Court of that state was upheld by the Supreme Court of the United States in *Watson* v. *Employers Liability Corp.*, 348 U.S. 66 (1954). Recently in *Trigo* v. *The Travelers Insurance Co.*, 91 P.R.R. 843 (1965), in construing the new provision establishing the direct action we stated:

"In clear and precise terms which require no construction, § 20.010 of the new Insurance Code established a substantive and absolute liability on the part of the insurer towards the prejudiced party whenever there was a loss covered by the policy, which responsibility was not to depend either upon payment by the insured by virtue of a judgment against him, or upon any final judgment against him. Section 20.030 uses a language very similar to that of the Louisiana legislation, to which we referred in the *Pérez* case, as creating a substantive liability directly against the insurer, in accordance with the construction that, in the same sense, the courts of that state had given to said legislation."

■■ It is evident then that in our jurisdiction there now governs a provision similar to that of Louisiana which permits a direct action against the insurer, distinct and separate from the action against the assured. In *Lumbermen's Mut. Cas. Co.* v. *Elbert*, 348 U.S. 48, as we have seen, the Supreme Court of the United States explained the scope of the Louisiana statute. It explained that in the direct action the insurer is foreclosed from asserting the personal or privative defenses of the assured. Similarly the insurer is severely restricted in advancing technical defenses based upon the

terms of the policy, such as a failure of notice, when the insured party brings a direct action.

In *Edwards* v. *Royal Indemnity Co.*, 161 So. 191 (La. 1935), cited in *Landol*, the Supreme Court of Louisiana construed a provision identical to the one in our Insurance Code to the effect that "any action brought . . . shall be subject to all the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured." It was stated:

"It will be noted that the last paragraph of the statute does not provide that the insurer may plead such defenses as the assured may plead against a claimant for damages, but clearly states that such action shall be subject to such defenses as could be urged by the insurer to a direct action brought by the assured. In short, if the insured pays a claim to a third person whom he injured, the insurance company would have the right to refuse to reimburse the insured, in the event the insured paid the claimant when there was no liability. For instance, if the insured were free from fault or if the claimant were guilty of contributory negligence, the insurer could resist the insured's claim for reimbursement.

"Can it be said that the Legislature intended to include defenses which are purely personal between the insured and the injured party, or did it mean to confine the defenses to those which were necessarily connected with or grew out of the accident, or arose from the lawful terms and conditions of the policy?"

And then it reaches the conclusion that the insurer may not plead the privative defenses of the insured. To that effect it says:

"It is, therefore, our opinion that the Legislature intended to give the insurer the right to plead defenses which it could urge against the insured, but not defenses which are purely personal between the insured and claimant, and in no way growing out of, or connected with, the accident or policy."

See also *Futch* v. *Fidelity & Casualty Co.*, 166 So.2d 274 (La. 1964); *West* v. *Monroe Bakery*, 46 So.2d 122 (La.

1950); *Ruiz v. Clancy*, 162 So. 734 (La. 1935), Miller: *Aspects of a Public Liability & Property Damage Policy in Louisiana*, 15 Tul. L. Rev. 79 (1940).

In *Harvey v. New Amsterdam Casualty Co.*, 6 So.2d 774 (Ct.App. La. 1942) the following was stated in relation to the ruling exposed in *Edwards*:

"It will thus be seen that the Supreme Court specifically states that the claimant has both a cause and a right of action against the insurer where he has a cause of action against the assured, but, because of some relative incapacity, does not have a right of action against the assured. Briefly, the court holds that, under Act 55 of 1930, the insurer cannot set up defenses which are purely personal to the assured."

■ The foregoing does not mean that the insurer assumes an absolute liability. It depends on whether the policy covers the risk. To that effect it was stated in *Scheeren v. Gulf Ins. Co. of Dallas, Texas*, 174 So. 380 (Ct.App. La. 1937):

". . . where the facts show that the policy covered the particular risk, the personal immunity to suit of the tort-feasor does not protect the tort-feasor's insurer. We did not say and we could not say that, by reason of the statute, there is created in favor of an injured party a right to recover from the insurer under circumstances not covered by the policy. The insurer may always set up against the injured party the defenses which it may have set up against the insured."

See also, *Musmeci v. American Automobile Insurance Co.*, 146 So.2d 498 (Ct.App. 4th Cir. La. 1962).

■■ It is proper now to consider the question set up in the present appeal. The municipality was not served notice within the term established by law of the occurrence of the accident.[3] The insurer requested the dismissal of the action

---

[3] Plaintiffs also alleged that they served notice to the municipality within 90 days from the date they had knowledge of the total amount of the damages claimed. It is not necessary to discuss, in view of the conclusion we have reached, whether the period of 90 days is counted

on this ground. But in the present state of our law, the lack of service can only be invoked by the municipality. The requirement of service within the 90 days of the occurrence of the accident as a precedent condition to the filing of a complaint against a municipal government, is of strict compliance and operative as estoppel, *Mangual* v. *Superior Court, supra.* If there is no service no action may be instituted against the municipality but there is no bar to its filing against the insurance company, it being a direct action against the latter. The insurance company does not profit from the aforementioned provision of the Municipal Law, which in effect is solely a condition for filing the action against the Municipality.

For the reasons stated the judgment appealed from is reversed and the case remanded for further proceedings consistent with the pronouncements herein.

Mr. Justice Blanco Lugo concurs in the result.

from the date when the accident occurred or from the date exact knowledge is had of the total amount of the damages suffered.