77 So.2d 228 (1955)
Morris BETHLEY
v.
Jack COCHRANE.
No. 20404.
Court of Appeal of Louisiana, Orleans.
January 3, 1955.
Rehearing Denied January 31, 1955.
Writ of Certiorari Denied March 21, 1955.
*229 James E. Courtin and Sidney F. Braud, New Orleans, for plaintiff and appellee.
*230 Gatlin & Murphy, New Orleans, for defendant and appellant.
McBRIDE, Judge.
About 8 o'clock on the morning of November 11, 1952, plaintiff, a young Negro man, was shot and severely wounded by the defendant, Jack Cochrane, while trespassing upon the property of defendant located at 5713 Old Gentilly Highway in New Orleans. Alleging that the defendant's act was willful, wanton, and without justification, plaintiff brings this suit to recover damages in the sum of $10,000 for physical injuries.
The defendant freely admits the shooting of plaintiff, but defends the action on the allegations that he had been robbed many times of valuable tools and equipment and on the morning in question he saw plaintiff, who he thought was a robber, on his property carrying a package which he believed contained a dangerous weapon; that plaintiff advanced upon him and believing himself to be in mortal danger, and knowing plaintiff to be a trespasser, he shot plaintiff in order to stop him.
There was judgment below in favor of plaintiff for $1,500, and defendant has appealed. The appeal has been answered by the appellee who prays that the judgment be increased to the sum of $5,000. Plaintiff also prays in his answer to the appeal that the fee of Dr. J. Kelly Stone, who testified as an expert witness, be fixed at the sum of $100 and taxed as costs in the case.
Plaintiff was a laborer and at about 8 A.M. on November 11, 1952, appeared at his place of employment which was located across the street from the premises of defendant. The evidence shows that because certain fellow employees had not yet arrived upon the scene, plaintiff and a co-worker named Morris Joseph, instead of starting to work, began to pick up from the ground pecans which were lying under certain trees located in the vicinity. The defendant's property is not completely enclosed by fence and eventually plaintiff and Morris Joseph knowingly entered the property of defendant. Plaintiff carried a paper bag which had contained his lunch into which he placed the pecans as he gathered them.
Defendant seeing from inside his home the presence of the two men on his property secured a revolver and went outside firing a shot in the air as he came through the door. At this point Morris Joseph took off and removed himself from the scene as fast as he possibly could.
What happened afterward is known only to Morris Bethley, the plaintiff, and Jack Cochrane, the defendant, and as can be expected their testimony is irreconcilably in conflict.
Plaintiff said that when he saw defendant and heard the shot, he ran behind a swimming pool located on the property which offered good cover as it was raised about four feet above ground level. From this position he shouted to defendant that he had been only gathering pecans and would return them and pleaded earnestly with defendant not to shoot him. Defendant made no reply so plaintiff peered over the wall of the pool whereupon defendant aimed the pistol at him which caused plaintiff to again "duck" behind the pool. Plaintiff stated he then raised himself in order to place the bag containing the pecans on the side of the pool, and that when he was in this unprotected position defendant aimed and fired the pistol at him the bullet hitting him in the chest and knocking him down but not unconscious. Plaintiff testified that he was placed on the porch of defendant's home, but that before the defendant made a call for the ambulance he first telephoned to and spoke with his lawyer.
Defendant admits that upon leaving the house he fired into the air, which he says was to frighten plaintiff, but, notwithstanding the shot, the latter continued to advance. He claims he warned plaintiff to halt or he would shoot him, but despite the warning plaintiff continued forward and he shot plaintiff believing himself to be in imminent *231 danger of receiving bodily harm at the hands of plaintiff.
In view of the decision, it is manifest that the trial judge believed plaintiff's story and resolved the factual situation favorably to him, and under the familiar rule of law we do not believe that the conclusion of the judge should be disturbed. He saw and heard the parties testify and had excellent opportunity to note their demeanor and expressions on the witness stand and was in a better position than we to say which party should be believed. We could hardly go so far as to disregard plaintiff's testimony and accept in its place the testimony given by defendant. We might comment further by saying that after a careful analysis the testimony of plaintiff would appear to be the more plausible.
We are in accord with the conclusion that the defendant was without reason to fear that he would be attacked and suffer bodily harm. There is no question that plaintiff was a trespasser upon the estate of defendant and that defendant had the right to use force to repel him. It has been said that in this country the right of a man to maintain his home free from outside interference and intrusion and to repel invasion therein by the use of force is well recognized and generally understood. But the defendant, under the law, was under the duty of using only such means as were reasonable to terminate the intrusion, and his resort to the use of a deadly weapon on plaintiff, who was unarmed and submissive, cannot in the least be countenanced as justifiable. All that the plaintiff did after hearing defendant's first shot was to seek cover behind the swimming pool whence, to use his own expression, he "tried to talk him out of shooting me, I said all I was doing was picking up pecans."
Defendant is clearly liable unto plaintiff for damages.
The law applicable to this case is stated in 4 Am.Jur. thus:
Sec. 51 (page 153).
"One who, in acting in self-defense, uses force in excess of that which he is privileged to use, is liable for so much of the force used as is excessive, and the other person has the normal privilege of defending himself against the use or attempted use of excessive force. In other words, to the extent that excessive violence and unnecessary force is used in repelling an assault, one becomes liable as trespasser and subject to an action for assault and battery. In determining whether the particular means used is or is not excessive, the amount of force exerted, the means or instrument by which it is applied, the manner or method of applying it, and the circumstances under which it is applied are factors to be considered. Ordinarily, a person is not justified in using a dangerous weapon in self-defense where the attacking party is not armed but commits the battery by means of his fists or in some other manner not essentially dangerous to life or limb. * * *"
Sec. 61 (page 159).
"As an incident to the right to acquire and own property, recognized by the laws of all civilized communities, the owner has the right to defend and protect it against aggression, and if he commits an assault in so doing, the law will justify him. As stated by the American Law Institute, an assault for the purpose of preventing or terminating another's intrusion upon the assailant's possession of land or chattels is privileged where such intrusion is either wrongful or made in such way as to cause the assailant to believe that it is wrongful, and he reasonably believes that the intrusion can be prevented or terminated only by the immediate infliction of the assault, provided the means he uses are reasonable and provided further that he has first requested the other to desist from the intrusion or that the circumstances are such that a request of this kind may be dispensed with. * * *"
Sec. 63 (page 161).

*232 "The means that may be lawfully used in repelling or terminating an intrusion must be reasonable; one cannot lawfully, in defending his lands or chattels from intrusion, use means intended or likely to cause injuries in excess of the force correctly or reasonably believed to be necessary to prevent or terminate the intrusion. While a man may use as much force as is necessary in the defense of his property, it is generally held that in the absence of the use of force on the part of the intruder, he is not justified in inflicting great bodily harm or endangering life."
In the comparatively recent case of Patterson v. Kuntz, La.App., 28 So.2d 278, 283, we had occasion to say:
"Of course, resort to the use of a dangerous weapon in order to repel a supposed attack upon a defendant's person or that of persons to whom he owes a duty to protect cannot be countenanced as justifiable save in exceptional cases where the actor's fear of the danger is not only genuine but is founded on facts which would be likely to produce similar emotions in men of reasonable prudence. Thus, in the recent case of Bacas v. Laswell, La. App., 22 So.2d 591, where we had occasion to review much of the prior jurisprudence of this state on the subject, we pointed out that, while recovery in Louisiana will not be permitted in assault and battery cases where the plaintiff is the aggressor and the difficulty was brought about through his exclusive fault, this rule will not be applied where there is mutual fault respecting the difficulty which brings about the injury in cases where the defendant uses undue force (such as a dangerous weapon) not justified by the occasion."
The wound inflicted upon plaintiff was not superficial as defendant alleged in his answer. In fact the injury sustained by plaintiff was of a most serious nature and plaintiff was critically ill for some days. The bullet had passed through plaintiff's right hand before entering his right chest.
Plaintiff was immediately rushed to Charity Hospital and there hospitalized for two weeks. His chart reflects that his chest filled and 700 cubic centimeters of blood were extracted by daily tappings over a period of more than a week. X-ray findings suggested fluid over the entire right lung field. Plaintiff was given transfusions and 1,500 cubic centimeters of blood were infused in his veins.
Dr. J. Kelly Stone, an experienced medical expert, reviewed the hospital record and testified that in his opinion it reflected that plaintiff's wound was of a very serious nature and there remained some permanent damage to the right lung. From the X-rays, which he personally examined, it appears that a foreign body (the bullet) is still embedded in the soft tissues of the back near the spine. The doctor testified that an attempt to remove the foreign body, unless there are further and more serious symptoms, would be unwise. The doctor also mentioned that it was possible and likely that adhesions between the lung and the pleura might develop at some later date and cause plaintiff serious trouble.
It would take no amount of imagination to believe that plaintiff as he lay in the hospital in the critically wounded condition suffered not only excruciating physical pains but the most terrifying mental anguish, he being under the belief for days that his life could not be saved by the physicians.
Plaintiff in answer to the appeal seeks an increase in the amount of the judgment to $5,000. While we believe that the award is inadequate, we do not think that an increase to the extent prayed for by plaintiff is warranted, and considering all of the circumstances surrounding the case, we think that a recovery of $3,000 would be quite proper.
It is not disputed that Dr. Stone's appearance was as an expert witness for *233 plaintiff and an expert's fee of $100 would be fair.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended so as to increase the amount thereof to the sum of $3,000 and to provide that the fee of Dr. J. Kelly Stone be fixed at the sum of $100 and taxed as costs, and as thus amended and in all other respects the judgment appealed from is affirmed.
Amended and affirmed.