LOUIS H. YARRUT, Judge ad hoc.
Plaintiff, as administrator, and for the use and benefit of his minor son, aged 15, seeks to recover' for injuries and loss of wages sustained by his son who was shot in the ankle by defendant. Defendant admits the shooting but pleads self-defense. There was judgment for plaintiff for $2,000. Defendant has taken this appeal.
Defendant is a man 44 years of age, weighing 205 pounds. Plaintiff’s son was 15 at the time and weighed 127 pounds. Defendant operates a commercial establishment in Bridge City, Jefferson Parish, called the “Sweet Shop,” where intoxicants are dispensed.
On June 13, 1954, about 9 o’clock p. m., defendant was attracted by a general brawl outside his shop. He got his revolver and went to investigate. He found two of a group of teen-age boys engaged in a fight with wooden sticks. Defendant sought to act as peacemaker. Defendant testified that when he took the stick away from one of the combatants and approached the other, plaintiff’s son struck him. The boy denies ■ he ever had or used a stick.
There is a conflict in the testimony as to whether plaintiff’s boy actually participated " in the combat and struck defendant. Assuming this to be true (arguendo), the question then arises, was defendant justified in shooting the boy under the circumstances ?
This brings us to consider the events that occurred just before the shooting. Defendant first testified:
“That was the only way I could get him off of me. He had that timber working on me. I was on my knees and he was going to come down again and when I looked up, that was the only *269 way to get him off. If I could have put my hands on him, I wouldn’t even have shot him.”
Yet, when questioned by the Court, he testified :
“The Court: Were you crouched down?
“Defendant: I didn’t want to shoot him to kill him. I was trying to shoot him to get him off of me.
“The Court: Where was he at that time?
“Defendant: He was in front of me I would say about twelve or fourteen foot from me.
“The Court: Was he moving at all ?
“Defendant: When he hit me with the board, it looked like he jumped back or something. I raised up and saw him. He had backed off of me like he was waiting for me to get up to hit me again.
“Q. Did you say anything to him '.before you shot him? A. No, sir.
“Q. You didn’t call any warning? A. No, sir, not that I remember.”
In Bethley v. Cochrane, La.App., 77 So. 2d 228, 231, we held that the defendant was not justified in shooting a young Negro boy merely because the boy was trespassing •on his property. In that case we held:
“We are in accord with the conclusion that the defendant was without reason to fear that he would be attacked .and suffer bodily harm. There is no ■question that plaintiff was a trespasser upon the estate of defendant and that ■defendant had the right to use force to repel him. It has been said that in this •country the right of a man to maintain his home free from outside interference and intrusion and to repel invasion therein by the use of force is well recognized and generally understood. But the defendant, under the law, was under the duty of using only such means as were reasonable to terminate the intrusion, and his resort to the use of a deadly weapon on plaintiff, who was unarmed and submissive, cannot in the least be countenanced as justifiable. All that the plaintiff did after hearing defendant’s first shot was to seek cover behind the swimming pool whence, to use his own expression, he ‘tried to talk him out of shooting me, I said all I was doing was picking up pecans.’ ”
A plea of self-defense is one of confession and avoidance, and places the onus of proof on the pleader. When considering such a plea, the time, place and surrounding circumstances must be considered. One might be justified to act upon an impulse of self-preservation when suddenly confronted by an assailant from ambush, or by an intruder in his home. . See 4 Am. Jur. p. 153, § 51.
Here we have a 44 year old man, weighing 205 pounds, armed with a revolver, confronted by a 15 year old boy, weighing 127 pounds, holding a wooden stick 2x6 inches in width and thickness and
feet long. They are facing each other in a public street, 14 feet apart, surrounded by many spectators. A shot from defendant’s revolver could and did reach the boy in a flash without defendant advancing an inch, while the boy could not reach defendant to strike him without actually advancing 8 feet or more. Yet, without any overt act or threat of advance by the boy, and without any threat or warning from defendant that he would do so, defendant shot the boy. Defendant was too quick on the trigger and was not justified in using his revolver under the circumstances. Defendant’s action seems clearly to have been retaliatory rather than defensive.
With reference to quantum, the District Judge said he was not impressed with plaintiff’s testimony seeking to show the extent of the injuries and loss of wages and earning capacity, and allowed only $2,-000 damages. The medical record shows that an X-ray was made which disclosed:
*270 “ * * * a slight linear fracture involving the middle third of the shaft of the tibia with excellent position of fragments. The margins of the fracture are smooth and regular which would indicate an old fracture with evidence of some bony union.
“There is a metallic foreign body suggestive of a bullet in the soft tissues on the posterior aspect of the lower extremity of the tibia.”
The attending doctor thought that complete bone healing was anticipated once the foreign metallic body was removed.
The trial judge saw and heard the witnesses, and there appears to be no error in his conclusions and judgment. Accordingly, the judgment is affirmed.
Affirmed.
McBRIDE, J., absent.